UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Civil No. 10-2407 (PJS/TNL)**

**Luis Alberto Lopez, Jr.,**

   Petitioner,       **REPORT AND RECOMMENDATION**

  v.

**Scott Fisher, Warden**

   Respondent.

___

Luis Alberto Lopez, Jr., FPC–Yankton, P.O. Box 700, Yankton, South Dakota 57078, *pro se* petitioner;

Mary Jo Madigan, Assistant U.S. Attorney, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Respondent.
___

TONY N. LEUNG, United States Magistrate Judge.

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.") [Docket No. 1]. This action has been referred to the undersigned magistrate judge for a report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b).

Petitioner brings the present petition seeking earlier release, alleging that the Bureau of Prisons ("BOP") erroneously calculated his concurrent sentences in a partially consecutive manner. Respondent opposes the petition, arguing that this Court lacks jurisdiction to consider the petition, Petitioner failed to exhaust his administrative remedies, and Petitioner's sentence has been properly calculated.

1

For the reasons set forth herein, **IT IS HEREBY RECOMMENDED** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Doc. No. 1] be **DISMISSED WITH PREJUDICE**.

## II.  BACKGROUND

Petitioner Luis Alberto Lopez, Jr. ("Lopez") is an inmate who was confined in the Federal Correction Institution, Sandstone ("FCI-Sandstone") in Minnesota when the present petition was filed on June 17, 2010.  (Pet.)  On January 20, 2011, Lopez was transferred to the federal prison camp in Yankton, South Dakota ("FPC-Yankton"). (Notice of Change of Address [Doc. No. 12]).

Petitioner's confinement began when he was arrested in the Eastern District of Washington on May 24, 2007; and he was indicted on June 6, 2007.  (Declaration of Bryan Erickson "Erickson Decl.", [Doc. No. 5] ¶ 4, Attach. 1; Declaration of Angie Coyle ("Coyle Decl.") [Doc. No. 6] ¶ 2, Attach. A).  Petitioner was subsequently indicted in the District of North Dakota on September 28, 2007.  (Coyle Decl., ¶ 3, Attach. B).  The District Court in the Eastern District of Washington was the first to sentence Petitioner, sentencing him on September 22, 2008, to a 78-month term of imprisonment for conspiracy to possess a listed chemical with intent to manufacture a controlled substance. (Erickson Decl., ¶ 5, Attach. 2).  Almost a year later, on September 9, 2009, the District Court in the District of North Dakota sentenced Petitioner to a 120 month term of imprisonment for conspiracy to possess with intent to distribute and distribute controlled substances, and ordered the sentence to run concurrently with the sentence imposed by the Eastern District of Washington.  (Erickson Decl., ¶ 6, Attach. 3). District Judge Ralph R. Erickson of the District of North Dakota explained:

2

> Due to the minimum mandatory sentence the defendant was facing, the Court was unable to depart downward under § 5G1.3 of the Sentencing Guidelines. However, the Court strongly recommends that defendant get credit for time served from the date he was indicted on this charge, particularly in light of the extended delay in bringing him to North Dakota. The Court specifically notes that the defendant was indicted in the District of North Dakota on September 28, 2007, and should have appeared shortly after that date. However, as a result of circumstances beyond his control that prevented him from appearing, he did not appear in the District of North Dakota until February 9, 2009 (approximately 16 months later). Therefore, due to the extraordinary circumstances, the Court finds the defendant should receive credit from the time he was indicted in the District of North Dakota, which was September 28, 2007. . .

(*Id.*, Attach. 3).

The BOP did not commence Petitioner's North Dakota sentence on September 28, 2007, because that date was prior to the imposition of sentence. (*Id.*, ¶ 9). Under 18 U.S.C. § 3585(a) and BOP regulations, the earliest date a sentence may commence is the date of imposition. (*Id.*, ¶ 7.) 18 U.S.C. § 3584(c) and BOP Program Statement 5880.28 provide that multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated, for administrative purposes, as a single aggregate term of imprisonment. (*Id.*, Attach. 5) Following the instructions in the Program Statement, the BOP calculated an aggregate sentence of 131 months and 18 days, commencing on the day Petitioner's first sentence was imposed, September 22, 2008. (*Id.*, ¶¶ 9-10, Attach. 7). In calculating the sentence, the BOP added an overlap time of four years, five months and eighteen days to the 78 month sentence imposed by the Eastern District of Washington; and Petitioner was given 487 days of prior custody credit for May 24, 2007 through September 21, 2008, under 18 U.S.C. § 3585(b)(2). (*Id.*, ¶ 9, Attach.

6). Applying good time credit, Petitioner's projected release date is December 10, 2016. (*Id.*, ¶ 3).

Petitioner contends the BOP miscalculated his sentence in a partially consecutive manner because a fully concurrent sentence was ordered by the sentencing court in the District of North Dakota. Petitioner contends his sentence should be 120 months less good conduct time.

Petitioner filed an administrative remedy request at the institutional level, challenging the computation of his sentence. (*Id.*, ¶ 11 and Attachment 8). The request was denied, and Petitioner appealed to the Regional Office level. (*Id.*) The BOP denied the appeal. (*Id.*) Petitioner did not appeal to the Central Office before filing the petition, but did so later. (Reply to Respondent's Resp. to Pet. Under 28 U.S.C. § 2241 ("Reply") [Doc. No. 11] ¶ 1). Petitioner contends exhaustion is futile because he raised a policy issue that can only be determined by the BOP's Designation and Sentencing Computation Center in Grand Prairie, Texas, which is not part of the administrative remedy process. (*Id.*) Additionally, Petitioner asserts his final remedy request to the Central Office "is due to be answered by or before September 25, 2010."[1] (*Id.*)

Petitioner alleges the following in his Petition:

> The petitioner was sentenced in two different federal jurisdictions, but was given a fully concurrent sentence by the North Dakota sentencing judge, which expressed his desire to depart downward pursuant to USSG § 5G1.3. The petitioner was subject to a 120 month mandatory minimum term of imprisonment, which was run concurrent to the 78 month sentence received in the Eastern District of Washington. The BOP has erroneously recalculated the

---

[1] Petitioner asserted that he attached an exhibit to his Reply, indicating that a response to his appeal was due from the Central Office on September 25, 2010. The Court did not receive this exhibit.

> sentence in a partially consecutive manner, which would force the petitioner to do a total of 131 months versus the 103 months that he is obligated to do.

(Pet. at 3.)

Respondent contends it properly calculated Petitioner's sentence, but the court should not reach this issue because Petitioner failed to exhaust his administrative remedies. (Resp. to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Gov't Resp.") at 8-10). In Reply, Petitioner asks this Court to strike Paragraph Eight and Attachment Six to the Declaration of Bryan Erickson, asserting they have not been authenticated. (Reply at 2). Paragraph Eight explains generally how an aggregate sentence is calculated, and Attachment Six is a calculation of Petitioner's aggregate sentence.

After Petitioner was transferred from a federal prison in Minnesota to a federal prison in South Dakota in January 2011, Respondent contends this Court lost jurisdiction over the petition because Petitioner and his immediate custodian are no longer in the District of Minnesota. (Resp't Mem. of Law in Resp. to Magistrate's Order [Doc. No. 15]). Respondent requests that the case be transferred to the District of South Dakota.

### III. DISCUSSION

#### A. Jurisdiction

Petitioner is no longer in the custody of Warden Fisher at FCI-Sandstone because he was transferred to FPC-Yankton in South Dakota in January 2011. Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ("*Padilla*"), Respondent asserts the only proper respondent is Petitioner's warden at FPC-Yankton in South Dakota, who is not

5

within this Court's jurisdiction. Respondent raises the question whether the Supreme Court's decision in *Padilla* undermines precedent that habeas jurisdiction continues despite the petitioner's transfer to another federal prison outside the court's jurisdiction, where jurisdiction was proper when the petition was originally filed. *See McCoy v. U.S. Bd. of Parole*, 537 F.2d 962, 966 (8th Cir. 1976) (where action could have been brought in Nebraska against the warden as physical custodian at the time of the filing of the petition, the subsequent transfer of the petitioner to Oklahoma did not cause the District of Nebraska to lose habeas corpus jurisdiction); *Weeks v. Wyrick*, 638 F.2d 690, 692-93 (8th Cir. 1981) (where petition was properly filed and the custodian properly served in the Western District of Missouri, and the petitioner was subsequently transferred to an Iowa prison, the Western District of Missouri did not lose jurisdiction over the petition).

In *Padilla*, the Supreme Court considered whether the petitioner properly filed his habeas petition in the Southern District of New York, although he had been moved from New York to South Carolina before his habeas petition was filed. 542 U.S. at 430-32. The Court held the petition was not properly filed because the District Court in New York did not have jurisdiction over the petitioner's immediate custodian, the Commander of a naval brig in South Carolina. *Id.* at 435-36. The Court stated, "[n]o exceptions to this rule, either recognized or proposed . . . apply here." *Id.* (footnote and internal citations omitted).

In dicta, the Court addressed a recognized exception.

> At first blush *Ex parte Endo*, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944), might seem to lend support to Padilla's "legal control" argument. There, a Japanese-American citizen interned in California by the War Relocation Authority (WRA) sought relief by filing a § 2241 petition in the Northern District of California, naming as a respondent her immediate

6

> custodian. After she filed the petition, however, the Government moved her to Utah. Thus, the prisoner's immediate physical custodian was no longer within the jurisdiction of the District Court. We held, nonetheless, that the Northern District "acquired jurisdiction in this case and that [Endo's] removal . . . did not cause it to lose jurisdiction where a person in whose custody she is remains within the district." . . . We held that, under these circumstances, the assistant director of the WRA, who resided in the Northern District, would be an "appropriate respondent" to whom the District Court could direct the writ. . . .
>
> While *Endo* did involve a petitioner challenging her present physical confinement, it did not, as Padilla and Justice Stevens contend, hold that such a petitioner may properly name as respondent someone other than the immediate physical custodian. . . . Rather, the Court's holding that the writ could be directed to a supervisory official came not in our holding that the District Court initially acquired jurisdiction-it did so because Endo properly named her immediate custodian and filed in the district of confinement-but in our holding that the District Court could effectively grant habeas relief despite the Government-procured absence of petitioner from the Northern District. Thus, *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.

542 U.S. at 440-41 (internal citations and footnote omitted). Thus, *Padilla* distinguished *Endo*; and *Endo* is instructive here. Like the Northern District of California in *Endo*, this Court had jurisdiction over the present habeas petition when it was filed because Petitioner was confined in FCI-Sandstone, and he properly named Warden Fisher as the respondent. Also as in *Endo*, Petitioner's absence from Minnesota was Government-procured. Finally, there is an appropriate respondent to whom the District Court could direct the writ, were it to be granted in this case, the BOP. The BOP is within this Court's jurisdiction by virtue of the presence of several federal prisons in

7

Minnesota in which the BOP operates. *See Warren v. United States of America, Inc.*, C/A No. 3:10-1245-MBS-JRM, 2011 WL 4435655 at *4 (D.S.C. Sept. 23, 2011) (finding court retained jurisdiction and writ could be directed to BOP); *Soliz v. Drew*, No. 8:11-cv-00562-MBS-JDA, 2012 WL 1825237 at *5-6 (D.S.C. April 16, 2012) (same); *Dixon v. Terrell*, No. 10-CV-5262 (KAM), 2011 WL 4543712 at *6 (E.D.N.Y. Sept. 29, 2011) (finding court retained jurisdiction but not naming the respondent to whom court could direct the writ).

Furthermore, the BOP is a proper respondent because it has the legal authority to effectuate Petitioner's release. *Warren*, 2011 WL 4435655 at *4; *see* 18 U.S.C. § 3624(a) ("a prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment . . ."); *see Jones v. Cunningham*, 371 U.S. 236, 243-44 (1963) (finding court retained jurisdiction after petitioner left the district because members of the Parole Board were still within the jurisdiction of the District Court and could "be required to do all things necessary to bring the case to a final adjudication"); *Elkins v. Holinka*, Civil No. 06-0335 (PJS/FLN), 2007 WL 270117 at *1, n.1. (D.Minn. Jan. 26, 2007) (finding court did not lose jurisdiction after petitioner was transferred to another federal facility and referring to substitute respondent as "the United States"). For these reasons, this Court recommends that it retain jurisdiction over the present petition.

**B.    Exhaustion of Administrative Remedies**

Prisoners are generally required to exhaust their administrative remedies before challenging the computation of a sentence. *U.S. v. Chappel*, 208 F.3d 1069 (8th Cir. 2000) (per curiam). The BOP has an administrative remedy process, and Petitioner did

not avail himself of the final administrative appeal to the General Counsel in the Central Office before filing his habeas petition. (Erickson Decl., ¶ 11, Attach. 8); s*ee* 28 C.F.R. §§ 542.13-18. After filing his habeas petition, however, Petitioner appealed to the Central Office, and a response to his appeal was due September 25, 2010. (Reply at 1-2). The date for a response having long past, presumably resulting in a denial of Petitioner's appeal because the parties have not informed the Court otherwise, the Court finds dismissal of the petition for exhaustion of administrative remedies would now be futile. *See Lueth v. Beach*, 498 F.3d 795, 797 n. 3 (8th Cir. 2007) (noting court's jurisdiction to decide § 2241 petition was not affected by failure to exhaust administrative remedies because exhaustion prerequisite is judicially created, not jurisdictional); *Robeson v. English*, Civil No. 12-647 (DSD/JSM), 2012 WL 4872672 at *1 n.2 (D.Minn. Oct. 15, 2012) (considering merits of § 2241 petition although the petitioner failed to appeal to the BOP Central Office). Thus, the Court recommends consideration of the merits of the petition.

**C.     Request to Strike Portions of Erickson Declaration**

The Court disagrees with Petitioner's contention that Attachment Six to the Erickson Declaration is unauthenticated and inadmissible. In Paragraph Two of the Erickson Declaration, Erickson states:

> As a Management Analyst [at the BOP], I have access to records maintained by the FBOP in the normal course of business for inmates, including criminal judgments, sentencing information, presentence reports, and administrative remedy data. My duties include calculating inmate sentences, and reviewing existing computations to ensure the sentences are computed correctly and comply with all statutes, regulations, and FBOP policies. I certify that the Attachments referenced herein are true and accurate copies of records kept in the regular course of

9

> business of the FBOP. The facts as set forth below are based upon my personal knowledge and beliefs, as well as information gathered from various records maintained by the FBOP.

The Federal Rules of Evidence apply to habeas proceedings. *See Felix v. Rios*, Civil No. 08-4925 (PAM/RLE), 2009 WL 2958001 at *3 (D.Minn. Sept. 10, 2009) (citing Fed. R. Evid. 1101(e)); *Stojkowski v. Fisher*, Civil No. 10-2390 (PSJ/LIB), 2011 WL 1831680 (D.Minn. April 18, 2011) (same). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The testimony of a witness with knowledge satisfies this requirement. Fed. R. Evid. 901(b)(1).

Paragraph Eight of the declaration is a statement of how aggregate sentences are calculated by the BOP, authenticated by Paragraph Two of the declaration, based on Erickson's personal knowledge as a Management Analyst at the BOP. *See Guinan v. Boehringer Ingelheim Vetmedica, Inc.*, 803 F.Supp.2d 984, 991-92 (N.D. Iowa 2011) (statements in affidavit in support of summary judgment motion were based on personal knowledge of manager who reviewed relevant notes and documents in the company's possession). Attachment Six is also authenticated by Paragraph Two of the declaration. Erickson's statements in Paragraph Two of the declaration satisfy the authentication requirement under Federal Rule of Evidence 901(b)(1) by providing the sworn statement of a witness with knowledge that an item is what it is claimed to be, a computation of Petitioner's aggregate sentence. See *United States v. Ingram*, 613

F.Supp.2d 1069, 1095 (N.D.Iowa 2009) (finding rule of witness authentication was satisfied by custodian of records).

      D.    **Sentence Computation**

Respondent contends it properly computed Petitioner's sentence under 18 U.S.C. § 3585(a) and (b), 18 U.S.C. § 3584(c) and BOP Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984). The Attorney General, through the BOP, has the responsibility to administer federal sentences, and must determine the amount of jail-time credit due on the sentence. *U.S. v. Wilson*, 503 U.S. 329, 335 (1992); *U.S. v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006). The BOP also has the exclusive authority to determine when a federal sentence commences. *U.S. v. Hayes*, 535 F.3d 907, 910 (8th Cir. 2008). These two steps in computing a federal sentence are governed by 18 U.S.C. § 3585(a) and (b). A sentence commences "on the date the defendant is received in custody . . . at the official detention facility at which the sentence is to be served. 18 U.S.C. § 3585(a). Furthermore, a sentence cannot commence before the sentence is imposed. *See Noble v. Fondren*, Civil No. 08-6259 (JRT/RLE), 2009 WL 4723357 at *4 (D.Minn. Dec. 2, 2009) (collecting cases); *Sisemore v. Outlaw*, 363 F.App'x 424, 424-25 (8th Cir 2010) (per curiam) (citing *Coloma v. Holder*, 445 F.3d 1282, 1283-84 (11th Cir. 2006) (per curiam) ("district court's order that prison term should run concurrently with prison term already being served did not mean the two sentences had the same starting date; federal sentence cannot commence prior to date it is pronounced, even if made concurrent with sentence already being served")).

The second step in sentence computation is determining the amount of credit due on the sentence. "A defendant" is given credit

> for any time he has spent in official detention prior to the date the sentence commences - -
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b). This provision precludes application of prior custody credit against multiple sentences when the sentences are imposed at different times and are concurrent. *See Mathison v. Morrison*, Civil File No. 06-3496, 2007 WL 3224671 at *5-6 (JMR/AJB) (D.Minn. Nov. 1, 2007) (time was already credited against first sentence).

18 U.S.C. § 3584(c) provides that multiple terms of imprisonment ordered to run concurrently (or consecutively) "shall be treated for administrative purposes as a single, aggregate term of imprisonment." The BOP has issued Program Statement 5880.28 of the Sentence Computation Manual, implementing the BOP policies with respect to its statutory duties.[2] The aggregate term of multiple concurrent sentences is calculated by the BOP utilizing certain procedures. The date is identified when the original sentence began and the length of the original sentence is added to it, producing the original sentence full term date. (Erickson Decl., Attach. 6). Next, the date is identified when the new sentence began, and the length of the new sentence is added to that date to produce the new sentence full term date. (*Id.*) The original sentence full term date is subtracted from the new sentence full term date to determine the amount of overlap. (*Id.*) The overlap is added to the length of the original sentence to produce the total

---

[2] A full copy of the Program Statement is available at http://www.bop.gov/policy/progstat/5880_028.pdf

aggregate sentence. (*Id.*) The total aggregate sentence is then added to the original sentence beginning date to arrive at the full term aggregate sentence date. (*Id.*) Prior custody credit is subtracted from the full term aggregate sentence date to arrive at the final full term date of the aggregate sentence, which in Petitioner's case was determined to be May 9, 2018. (*Id.*)

It is clear from the method of computation of an aggregate sentence that the computation accounts for the fact that a sentence cannot begin before it is imposed by adding an overlap period to the two individual sentences. See Erickson Decl., ¶ 10. The aggregate sentence computation also accounts for the preclusion of double credit under 18 U.S.C. § 3585(b) by crediting only the prior custody before the first sentence began, and treating the remainder of the time served as post-sentence time served against the aggregate sentence.

The BOP determined that Petitioner's federal sentence from the District of North Dakota commenced on September 9, 2009, the date the sentence was imposed. The BOP could not commence the sentence any earlier. Because Petitioner's original sentence began on September 22, 2008, and his new sentence did not begin until September 9, 2009; his total aggregate sentence was ten years, eleven months and eighteen days. The BOP credited Petitioner 487 days prior custody credit, from May 24, 2007 through September 21, 2008, the day before his first sentence was imposed, against his total aggregate sentence.[3] Thus, the BOP could not give Petitioner prior

---

[3] Respondent's brief states:

> "In accordance with 18 U.S.C. § 3585(b) and the sentencing court's suggestion, Lopez has been awarded credit toward his sentence for all time spent in federal custody since May

13

custody credit on his North Dakota sentence for September 22, 2008 through September 8, 2009, because that time was credited against his aggregate sentence, and double credit is not permitted under 18 U.S.C. § 3585(b). *See Henderson v. Outlaw*, No. 2:10CV00088 JLH/BD, 2010 WL 5574730 at *2 (E.D.Ark. Dec. 15, 2010) ("pre-sentence custody credit is not available for post-sentence, post-commencement time" . . . "Petitioner already received credit for this time, as it was applied to his aggregate sentence")).

Although the BOP's computation results in a sentence longer than Petitioner's 120 month sentence from the District of North Dakota, "concurrent" under 18 U.S.C. § 3584(a) means that the new sentence commences with the remaining portion of the

> 24, 2007, the date of his arrest in the Eastern District of Washington, including the time between September 28, 2007, the date of his indictment, and September 9, 2009, the date his sentence was imposed in case No. 3:07-cr-94-03, District of North Dakota."

(Gov't Resp. at 13). It is true that Petitioner was given "credit" for this time period against his aggregate sentence; but Petitioner was not given *prior custody credit* for this period of time against his North Dakota sentence, as the sentencing court suggested. The BOP gave Petitioner 487 days *prior custody credit*, from May 24, 2007 through *September 21, 2008,* and *post-sentence credit* for time served between September 22, 2008 and *September 8, 2009* against his *aggregate sentence.* Petitioner seeks double credit for September 28, 2007 through September 8, 2009, representing credit against Petitioner's first sentence as post-sentence time served, and credit against his second sentence as prior custody credit. Again, this is not how the BOP calculated Petitioner's sentence. *See* Erickson Decl. ¶ 9, Attach. 7 at page 3 of 3.

14

previously undischarged term of imprisonment.  *Wiley v. Bureau of Prisons*, Civil Action No. 09-156J, 2010 WL 3620393 at *4 (W.D. Pa. Sept. 13, 2010) (citing *Shelvy v. Whitfield*, 718 F.2d 441, 444 (D.C.Cir. 1983).  In other words, it does not operate in a "fully concurrent manner."  (*Id.*)  *See also Mathison*, 2007 WL 3224671 at *4 (quoting *Miramontes v. Driver*, No. 05-41822, 2007 WL 2110933 at *1 (5th Cir. 2007) (unpublished opinion) ("[e]ven [i]f it intends to do so, a district court does not have the authority under [18 U.S.C.] § 3585(b) to order a federal sentence to run absolutely concurrently with a prior sentence."))  Therefore, this Court finds no error in the BOP's calculation of Petitioner's May 9, 2018 full term aggregate sentence expiration date, and projected release date of December 10, 2016 via good conduct time.  *See Arellano v. Jett*, Civil No. 10-4833 (JNE/LIB), 2011 WL 3759830 at *3 (D.Minn. Aug. 5, 2011) ("Even though [the petitioner's] Wyoming sentence was to run concurrently with the South Dakota sentence that [he] was already serving, this does not mean that [the petitioner's] sentence could be no more than ten years")).

[Continued on next page.]

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The habeas petition be dismissed with prejudice [Doc. No. 1];

2. The Clerk of Court be ordered to enter judgment accordingly.

Dated this  29th  day of November 2012.

                                            *s/ Tony N. Leung*
                                            TONY N. LEUNG
                                            United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the report and recommendation to which objections are made and the basis of each objection. This report and recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **December 31, 2012**.